Case 16-2149 Larry Stewart v. Thomas Mackie, Oral Argument, not to exceed 15 minutes per side. When ready Mr. Shimkus for the appellant. Good morning, your honors. Assisting Attorney General Scott Shimkus on behalf of Respondent Appellant Warden Thomas Mackie. I would like to reserve two minutes for rebuttal, please. Criminal defendants are entitled to fair trials, but not perfect trials. In this case, the did not receive a fair trial in the Michigan State Courts. But the Michigan Court of Appeals reasonably determined that he did because he did not suffer any prejudice from the alleged confrontation and prosecutor misconduct errors. A reasonable jurist could think that any errors in Stewart's felony murder trial were harmless because phone records showed that Stewart's co-defendant, his girlfriend. Can I ask you a threshold question? Absolutely. And then I'd love you to go back to what you wanted to do, but just to help me figure out exactly what's at stake. And this is really effectively for both of you. The district court decision is a little ambiguous about the confrontation clause claim. I mean, I could see one way of looking at it that he meant to be addressing both claims, but I could see almost an equally fair way of looking at it that no, the confrontation clause claim is really part of the fair trial prosecutorial misconduct claim because one of the arguments is that they've been very careful about what you could say and what you couldn't, what you could argue and what you couldn't, and the allegations as he crossed that line, which of course could simultaneously be a confrontation clause problem, but also could be fair trial on prosecutorial misconduct. What's your assessment of that? So our assessment would essentially be twofold depending on how it is interpreted. Obviously, like you said, the first way you could interpret it is that this, the confrontation issue was decided only in the context of prosecutorial misconduct. And if that was the case, then we would argue that the prosecutor in fact did not commit any misconduct and thereby violate the confrontation clause because the trial court here ruled that many of these statements, in fact, really all but one of the statements the prosecutor used both in presentation through witnesses and in closing were deemed admissible. And in that sense, the prosecutor relied on those rulings in good faith and therefore could not. That's helpful to you on the prosecutorial misconduct claim, but that would mean if we followed that line, that we wouldn't do anything on confrontation clause and that would be for remand. That claim would still be live along with the other claims. That could be true. Yes. If the confrontation issue here... It wouldn't be fair. It wouldn't be fair to me to only run it through the lens of prosecutorial misconduct and not let them... That was an original habeas claim. It was. That's correct. The other side of that coin, if you will, is that in the district court's opinion, the judge did specifically say that he was deciding, he was granting habeas relief on both habeas claims two and five being the confrontation and the prosecutorial misconduct. But I think I agree with your honor that the walkers got mugging a bit in the analysis, the subsequent analysis. You would agree most of the analysis is about prosecutorial misconduct. That's correct. With one of those claims being on confrontation issues. Yes. That's absolutely correct. So as I said, the errors here, if there were any at all, were harmless because the phone records showed that the girlfriend lured the victim to the apartment. Stewart was seen at the apartment with a gun the night before the victim arrived and told someone he was going to rob someone. The victim went to the apartment the next morning and was shot. Stewart was seen running away from the victim immediately after the shooting. And finally, the same gun that Stewart had the night before matched a bullet recovered from the victim's body. So for all those reasons, if there were any errors here, confrontation or prosecutorial misconduct, they were... My first point is I'm not sure it actually exists. But my second point would be not sure how much of a difference it makes because in figuring out whether someone was denied a fair trial, you factor in the whole thing. So it could be semantics. But what's your take on the idea that it's probably technically inappropriate to have a freestanding harmless error analysis in a prosecutorial misconduct claim? I understand your point in the sense that you have to find prejudice for a prosecutorial misconduct claim to assume the harmlessness analysis. And I would agree with your latter point that it truly, it does not matter. The edpedeference applies regardless of whether the analysis for the prejudice is done through the prosecutorial misconduct claim or through a separate harmlessness analysis under Brecht. The edpedeference would apply equally in either context and we would win either way. Was there a ruling on the merits in the state court on the prosecutorial misconduct claim where plain error analysis was applied? Yes. So with respect to the prosecutorial misconduct claim, there were six, essentially six subclaims, if you will. And the Michigan Court of Appeals determined that three of those were not errors whatsoever. And three of them were errors, but that they were all harmless. So those three that they found that were errors, they conducted a separate harmlessness analysis for those. But all of them were analyzed, if you will, under the plain error doctrine because there was no objection to any of those six claims. So if I understand your argument is they're applying plain error, but since they analyzed it on the merits, that's what we should look to? Correct. Essentially under Fleming, you could look at both without them being mutually exclusive of one another. Because there was no objection, there was a plain error analysis that procedurally defaults the claims. But the ad podeferens will also apply to the alternative merits analysis that the Michigan Court of Appeals typically will do, even if they determine that plain error review is the proper framing. When you say that, you mean because part of plain error is how wrong you are in the merits? Is that what you mean by that? You said the Michigan Court of Appeals would typically do some merits review in a plain error analysis. Is that what you said? They often will do that. Okay. And I'm asking why. Is that because step one of plain error is whether it's wrong? Correct. And step two is whether it's plainly wrong? Correct. Yes. What do you do in a case where it's just not obvious what they were doing at all? Sometimes they will skip the first two steps about whether there was an error and whether it was plain. They might assume without deciding that there was an error and then just determine whether there was any prejudice suffered from whatever conduct there was. Does that pedeference vary across those scenarios in your view? We would argue that the deference would not vary, no. That whether they decide that there was an error, that it was harmless, or that there was no error at all, both of those would be entitled to add pedeference. And therefore, we would win in either case. And that's specifically what happened here. I planned on talking about the confrontation issue first, if Your Honors... Go for it. Sure. So, as I said, the errors here really were harmless, and primarily because the statements from Stewart's co-defendant that came in were largely cumulative of evidence that had already been presented in the trial. Mr. Sauer gave us some supplemental authority. I mean, it wasn't super recent supplemental authority, but it looked like Sixth Circuit cases saying you can't get around a confrontation clause problem by saying there was other evidence on the same point. I guess I'll make two points on that point there. So, first of all, he did cite two cases with supplemental authority. Vasquez was one of them. He actually had cited that in his brief. So he had discussed it already. The other case, those cases I believe said that if there was a single witness who corroborated the co-defendant's statements, then that perhaps would not be sufficient for harmless error analysis, and that the government would not prevail in that case. But here we have different things, multiple witnesses, and even documentary evidence that supported or rendered, I should say, Hamilton's statements cumulative. So we had witnesses Brian May and Justin, I believe his name was Justin Lane, making multiple statements regarding the nature of Stewart's relationship with Hamilton, the fact that they had been communicating over the telephone, in the hours leading up to the shooting, and the phone records themselves established that as well. So this is not the case where we had a single witness who said the same thing as Hamilton. We had different pieces of cumulative evidence coming from multiple sources. So I already mentioned the relationship. Can you explain to me why that's pertinent in the harmless error analysis? In other words, why does that matter whether you have two witnesses corroborating or one witness corroborating? Because they're still corroborating just one point. Justin Lane was corroborating one point. Brian May is corroborating one point. Phone records are a different beast, but go ahead. Sometimes those crossed over. So I believe both May and Lane, for instance, testified about the nature of the relationship between Stewart and Hamilton. And of course, that was an issue here because Stewart was not the only defending here. Hamilton was as well, and they were both charged with conspiracy. So the prosecutor was still charged with proving that they worked together. So inevitably, they were going to have to present evidence that they knew each other, that they communicated with one another, things along those lines. And that was all established even before the jury heard that Hamilton essentially admitted all of that was true. The second statement, the May statement's more damning, so to speak. And was that corroborated by anyone else? By that, are you referencing the presence of the gun? Yeah. That Mr. Stewart had the gun, I should say. Yeah. That's true. Mr. May was the only person who testified that he saw Stewart with a gun. Lane could not testify to that because Hamilton made sure he didn't see the gun by hiding it in her purse. So that is true. We have Brian May, he's the only one who testified about the presence of the gun. But we have other things that tied Mr. Stewart to the gun. So Mr. May said that he saw Stewart with this gun. He identified that as the gun that was involved in the shooting. The forensics team tied the bullet from the victim's body to that gun. The medical examiner testified that the shooting occurred from more than two and a half feet away, which would establish that it was Stewart who had the gun, not the victim, that the victim only obtained the gun after some sort of struggle after all of the shots had been fired. So even though May was the only one who said, I saw Stewart with a gun, there were other pieces of evidence here that at least implied circumstantially that Stewart had the gun, or that it was in Stewart's Whether they were errors or not, the trial court still deemed many of them admissible. Really, the only statement that came in during the trial that was not... On the confrontation clause point, that doesn't really matter if it's clearly wrong. You said the state trial court allowed several of these in. And I'm saying that doesn't much matter if that decision was clearly wrong. I agree that's highly relevant on prosecutorial misconduct. So it's very strange to say you've engaged in misconduct and complying with a trial judge's order. But I don't think it's that helpful on the confrontation clause, assuming it's otherwise a seriously flawed ruling. That would be true if the statements were admitted in error. And we would contend that many of these statements were not admitted in error. In fact, the Michigan Court of Appeals said only some of hearing a struggle in the hallway and then being shot through the wall. The nature of her relationship with Stewart. The fact that they had been dating for several months leading up to this. The fact that she was asking the victim to come to the apartment. Things along those lines. Those statements did not facially incriminate Stewart and therefore did not violate Bruton in this case. In fact, most of those statements would have gone to Hamilton's guilt for the charges against her, which were identical to the ones that had been lodged against Mr. Stewart. But the most damning statements were admitted in error. Correct? The statements referencing the gun and then specifically the Michigan Court of Appeals also found that the statements about how she had been communicating with both the victim and Mr. Stewart. Yes, the Michigan Court of Appeals said those were errors. Those were Bruton errors because they facially incriminated Mr. Stewart. But again, the Michigan Court of Appeals turned around and said, but they were harmless because they were accumulative. I get that, but the statements that mattered, they said were admitted in error. Sure, yes. We cannot deny that. Thank you, counsel. I see your time's up. You'll get your full rebuttal. Yes, thank you. Mr. Sauer. Do you mind if I ask you just a couple threshold questions about what your position is in terms of how we should look at the case, particularly this threshold question of whether we really should perceive this as a ruling on the habeas confrontation clause claim, as opposed to saying, no, that claim's still there, but what was really going on was arguments about prosecutorial misconduct in terms of crossing the lines that had been established. What's your preference or thought? Your Honor, we've read the district court's opinion as addressing both individual claims, the confrontation claim, which is- Because of how he starts and because of how he ends. Yes, sir. That's how we read it. The downside is if you lose the confrontation clause, I mean, maybe you know this best. I don't know the answer to this. Are there features of the underlying confrontation clause claim that he did not address? Yes, Your Honor. So then you really want us to go down that road? Well, there are features of the confrontation clause that we have addressed in briefing, and I'm prepared to talk to Your Honor about- No, no. I'm saying, so there's a confrontation clause freestanding claim in the habeas petition. Yes, sir. Are there features of that claim that Judge Rosen did not address? Because the risk at play here is if you call it two claims, and if you lose on the confrontation claim, that's done, even though it might be that there's some other arguments that fall under the label confrontation clause. Your Honor, I'm sorry. I understand your question. There are no additional claims or arguments that were not- He did not address. Okay, good. I got it. And the one that I'd like to focus on today is this statement that Renata Hamilton made to the officers that she saw Mr. Stewart with the gun the night before the incident. Brian May is the only other evidence at all in this case physically connecting Mr. Stewart with the gun. There were no fingerprints found on the gun. The only two eyewitnesses saw not Mr. Stewart holding the gun, but Mr. Brown. The only identifiable DNA was Mr. Brown's, not Mr. Stewart's. So this evidence was critically important to corroborate Mr. May's testimony. And as your Honor pointed out, I realize the cases are about 10 years old. I'm not aware of any changes in the law. Both Sixth Circuit cases that we cited in our 28J applied BRACT, applied full deference to the state court's interpretation and application of BRACT, and nevertheless found that on these types of cases where you just have one corroborating witness, the jury is struggling with circumstantial evidence, and then you have the jury in its deliberations ask to see the improperly admitted evidence, that strong evidence of doubt about whether that unlawfully admitted evidence affected this jury's verdict. So we think that analysis of cases applies equally here, and that the district court got this right on the confrontation issue. So you're starting with the thing he de-emphasized. Well, I find myself in that position sometimes. Yeah, I know. It happens. It does happen. And we're certainly not trying to run away from the prosecutorial misconduct issue. I'm not saying that. Why is it relevant what the jury asked for? Because we never know what they're thinking or what they're doing. It's relevant for two reasons. One, this court has found it relevant in two prior published opinions in conducting the same kind of analysis. It's also relevant because it indicates that the jury isn't satisfied that the evidence apart from this is sufficient to find the defendant guilty. That's the analysis that the court took, adopted in Vasquez and in But I just always thought of our role as we read the evidence at this point. We determine whether it would have an injurious prejudicial effect. I didn't think it was this particular group of nine or 12 and what it might have done to them. And that just seems like a kind of a dangerous inquiry and very hard one to figure out. Well, the analysis, Your Honor, under Brecht is the court analyzes whether this would have had a substantial and injurious effect on the jury, on this jury. On a jury. Well, I... Isn't it on a jury? I believe it. I think Fulcher and Vasquez both indicated it's on this jury, on the jury that actually heard the evidence. And we... Couldn't that involve a whole lot of study? I mean, that seems odd. It has to be on a jury. I understand what they say, but it has to be on a jury. Would this objectively impact in a jury, not subjectively, would it impact this jury? Well, Your Honor, if I can't persuade you that that's the correct interpretation, that we look at this jury... No, I'm not. Just tell me why I'm wrong with the way I'm thinking about it. Yeah. Well, because it's a question of prejudice. It's a question of harmlessness. But don't you want it to be objectively? I mean, don't you want it to be in the sense that we look at would this harm in front of any jury? It doesn't matter who the jury is. And that's why it seems odd to me to look at what this particular jury was doing. I've always understood harmlessness to look at just would it harm a jury, so to speak. But when you conduct that analysis, Your Honor, you're not doing it in isolation. You're doing it on the record that you have before you. And as Fulcher found, as Vasquez found, when the record itself indicates that the jury in this case wanted to hear this evidence... No, Your Honor. Our client would still prevail because there's the evidence in the record physically tying my client to the gun other than Brian May is non-existent. This is the only testimony corroborating Brian May's... It's such a weak proxy that they asked a question one time and not another. If we really cared about what this jury would do, we'd have evidentiary hearings and bring them in and say, what were you thinking 7, 5, 20 years ago? I understand your point, Your Honor. But even if this case were just analyzed in the abstract without considering what this jury did, it is strong evidence, even in the abstract, that if a jury is dissatisfied that the evidence in the record apart from this statement was sufficient to find the defendant guilty, that's what Brecht asks. Brecht does not take out the bad evidence and see if there's enough good to support the jury verdict. That's not Brecht. The Supreme Court tells us in O'Neill, that's not the test. The test is whether the factors are evenly balanced. And if they're evenly balanced, you have to grant the writ. And that's what the judge here... And it's not just the question about wanting to see Renata Hamilton's statements. It's the fact that you have to... What do we do with the Michigan court, right? Correct me if I'm wrong, found Hamilton's statement in error, right? Correct. But found it harmless. Correct. And so we apply EDPA deference to that, correct? The EDPA deference is subsumed within the Brecht test. That's the Supreme Court's Davis versus Ayala case. So there's no independent analysis of whether it's objectively unreasonable. If we satisfy Brecht, we've satisfied our burden. The same analysis that the court engaged in, in Vasquez and Fulcher. Has the Supreme Court ever compared the Brecht analysis to EDPA in terms of its difficulty or ease of being met? We certainly talk about that in Davis. Perhaps not in depth. I'm trying to remember, Your Honor, if they do. Which is harder, which is easier? Well, if it's harder to establish Brecht, because Brecht... Than EDPA? EDPA is subsumed within Brecht. And that's... They reversed the Ninth... The Ninth Circuit in that case had said, oh, well, you don't provide any deference because you're applying Brecht. And the Supreme Court said, no, Brecht is the test. Any deference necessary under EDPA is subsumed within that. But I want to get back to the other reasons why, if I can, Your Honors, why the evidence, apart from this Renata Hamilton's statements, the jury found it was insufficient. We knew the jury was struggling with gun possession. Because the only eyewitnesses said that Mr. Brown had possession of the gun. Two eyewitnesses. Mr. Lane, the night before, said, I didn't see a gun at my apartment. And I didn't think anybody was trying to hide anything. But Brian said there was a gun. But Brian May. Brian May is the only evidence that they had, his testimony, establishing some type of physical connection with the gun. What about the circumstantial evidence he points to? That he says it was two and a half feet away, things like that. Your Honor, there's no dispute here that there was a physical struggle. And in the process of that uncontrolled physical struggle, there were gunshots. And the ballistic evidence was largely inconclusive from our review of the record. But we know the jury was struggling. I mean, and I use this not as the strongest evidence, but to confirm our objective analysis of the record here. I'm just struggling with that one. I mean, I say all the time in our oral argument, I don't know what to do with this case. This is really difficult. I'd be quite offended. And I think the US Supreme Court would be quite surprised if in a cert petition, they said, oh, Judge Sutton had oral arguments that this case was really hard. It's a 51-49 case. I mean, who cares what Judge Sutton was thinking at a given point in time? It's just not how you assess these things. And what a jury does with respect to what evidence they ask for or don't ask for, just odd. Because if your inference is fair, it's also fair to go the other way. This jury, it took two hours. They didn't ask for anything. And we're going to decide harmlessness based on that? It just seems like a very dangerous approach. But you do have two cases that say it. So that was our problem, not yours. Well, we would ask the court follow those cases. What we have in this case above and beyond that, that was not in either of those, is an affirmative instruction that the jury could consider these statements against Mr. Stewart. So that is grave doubt, Your Honors. That's grave doubt. And under Brecht, that's what we have to show. Grave doubt as to whether this evidence affected the verdict. You said you weren't running from the prosecutorial misconduct claim. So one question I have about that is, is there harmless error? Is that a freestanding component of it? Is it baked into how you think about prosecutorial misconduct? What's your thinking on that? I have never considered a separate harmlessness aspect to it. I think it's built in the Darden test, whether it rendered the proceedings fundamentally unfair. What about the fact that the Darden misconduct seemed worse than the misconduct here? Well, I think collectively the misconduct here... You think was worse. ...surpasses Darden. Yes, Your Honor. I mean, the jury... Let's take a step back away from the stuff that the state court said you couldn't admit, that you could admit under confrontation clause and talk about the things that the state court told the prosecutor, you definitely can't go there. The state's attorney went there and introduced testimony, not only about the gun, but Renata's statement to officers that it was her job as part of the conspiracy to get Mr. Stewart or to get Mr. Brown into the apartment. That's a clear confrontation clause violation. Even the state court recognized it, instructed the prosecutor not to go there, and he did it anyways. That's Darden-Berger objectively unreasonable application of Supreme Court law. And the state court recognized that it was improper to do so. So we think there's a pattern here. And the error that the state court made is that analyzed each of these in isolation, instead of considering as the Supreme Court and Berger told us to do, consider them cumulatively. And that's what the district court here did. And if you consider them all cumulatively, I think it's inescapable that Mr. Stewart was prejudiced by the confrontation clause errors, by the confrontation clause errors that are embedded within the prosecutorial misconduct claim. And then also by the Doyle error, which we haven't talked about. And I realize, your honors, the district court- That was not reached, right? The district court did not address that. We offer it as an alternative basis to affirm. But that's another area of the law. Unlike prosecutorial misconduct, clear rules. You cannot impeach based on a defendant's post-Miranda silence. That's a clear rule. Now, my friend in his brief says, well, Mr. Stewart offered some testimony at trial that was inconsistent with his statements to police. That is certainly true. But that was after the prosecutor improperly asked him about his statements at trial. So it's the statement that causes the harm in the Doyle context. And we would suggest that the court can affirm and should affirm on any of these three grounds. All right. Thank you, Mr. Sauer. Appreciate it. All right, Mr. Shimkus. You've got some rebuttal, I think. Can I ask you, do you mind if I start with- Oh, yeah. Can I, so I want to follow up on this Brian May point. I'm sorry to keep coming back to this. But, so May's the only one that testifies. There's some, our case law says there's some issues with that. The jury asks about the gun, asks about, to hear this. There's some issues with that under our case. Let me twist it a little and say, even if you disagree with our case law, the only corroborating evidence of this, which we agree is impermissibly admitted statement, is Brian May. And why can't we look at objectively  and this is what I think he's saying, let's use what this jury did to put us in that position to understand if the error was significant. I think I understand your question. And I do think it's important to clarify exactly what the jury asked in this case. So they asked a single question about Hamilton's statements. They asked, quote, is the report or statements from Ms. Hamilton evidence that the jurors can review? They didn't reference anything about a gun in particular. They didn't reference any particular statements. And then the court responded, essentially, other than the testimony, no, there are no statements. We have no idea why the jury asked that question. We don't know what information they were seeking. We don't know which defendant they were trying to use that information for. They could have been using it to determine Hamilton's guilt because again, she was charged with identical crimes in this case. So the jury question here, I think, is minimally helpful to Petitioner Stewart's case because we have no idea what they were specifically. But what about the other point, that it's only corroborated by May? I would simply fall back on what I said previously, that even though May is the only witness who testified to that, there are other pieces of circumstantial evidence in this case that tied Mr. Stewart to that gun. And you said that. What is that? Go ahead. No, no. You said that distinguishes our other cases. But answer, go ahead. So what is that other evidence to you? As I mentioned before, the other evidence would be the distance that the shooting occurred from. So Mr. Stewart testified that, no, no, it was the victim who had the gun. We ended up in a struggle. He ended up getting shot because the trigger was pulled. But the medical examiner here testified that the shooting took place from at least two and a half feet away, presumably because there was no stippling on the victim's clothing, suggesting a close range fire. The other thing is... Just be real briefly. You're late. Yes, I apologize. The other thing that I would clarify with respect to the DNA evidence, there was no major donor DNA evidence found on the gun. But Mr. Stewart could not be exempted from that sample that was found on the gun. So I would point that out as well. Okay. Thank you to both of you for your helpful arguments and briefs. Mr. Sauer, I see you were court appointed. Your client's lucky. You did a great job and really appreciate it. I know you were doubly trained at this court. So I'm not surprised. And it's great to see you. Thank you for your work. And thank you, Mr. Shimkus, as well. So the case is submitted and the clerk may call the last case.